

Ashbrook Byrne Kresge LLC
PO Box 8248
Cincinnati, Ohio 45249
AshbrookByrneKresge.com

Benjamin M. Flowers
513 201 5775
bflowers@ashbrookbk.com

Kelly L. Stephens
Clerk of the Court
United States Court of Appeals for the Sixth Circuit
540 Potter Stewart U.S. Courthouse
100 E. Fifth Street
Cincinnati, Ohio 45202-3988

November 6, 2024

**Filed via CM/ECF**

*Re:    Writ of Mandamus filed in the Fifth Circuit*

Dear Ms. Stephens:

I am writing to alert the Court to an out-of-circuit filing relevant to this case.

By way of background, this case involves a challenge to the FTC's Negative Option Rule. Other groups of petitioners have filed challenges to this rule in the U.S. Courts of Appeals for the Fifth, Eighth, and Eleventh Circuits.

Under the judicial-lottery statute, 28 U.S.C. § 2112(a)(1), the FTC must transmit these petitions to the Judicial Panel on Multidistrict Litigation so that the matters can be consolidated and assigned to a single circuit.

The FTC has refused to transmit the petitions. To force the FTC to act, the petitioners in the Fifth Circuit are seeking a writ of mandamus requiring that the FTC

transmit the petitions to the Judicial Panel on Multidistrict Litigation. *See In re Electronic Security Association, et al.*, No. 24-60570 (5th Cir.) (attached as Exhibit 1).

Sincerely,

Ben Flowers

## CERTIFICATE OF SERVICE

I certify that on November 6, 2024, I filed this letter electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties for whom counsel has entered an appearance. Parties may access this filing through the Court's system.

*/s/ Benjamin M. Flowers*
Benjamin M. Flowers

# Exhibit 1

24-_____

# In the United States Court of Appeals for the Fifth Circuit

IN RE ELECTRONIC SECURITY ASSOCIATION, INTERACTIVE ADVERTISING BUREAU, AND NCTA – THE INTERNET AND TELEVISION ASSOCIATION,

*Petitioners*.

On Petition for Writ of Mandamus from the
Federal Trade Commission's Refusal to Comply with 28 U.S.C. § 2112

## EMERGENCY PETITION FOR WRIT OF MANDAMUS
## AND ADMINISTRATIVE STAY OF RULE
## RELIEF REQUESTED BY NOVEMBER 19, 2024

Allyson N. Ho
Brad G. Hubbard
Brian A. Richman
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue
Suite 2100
Dallas, TX 75201-2923

Helgi C. Walker
   *Counsel of Record*
Lucas C. Townsend
Michael P. Corcoran
Lael D. Weinberger
Connor P. Mui
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036-4504
(202) 955-8500
hwalker@gibsondunn.com

*Counsel for Petitioners*

# CERTIFICATE OF INTERESTED PERSONS

No. 24-_____

In the United States Court of Appeals for the Fifth Circuit

_____

IN RE ELECTRONIC SECURITY ASSOCIATION, INTERACTIVE ADVERTISING BUREAU, AND NCTA – THE INTERNET AND TELEVISION ASSOCIATION,

*Petitioners.*

_____

The undersigned counsel of record certifies that the following interested persons and entities described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

Further, pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned counsel of record certifies that there are no corporations that are either parents of any petitioner or that own stock in the Petitioners.

## A. Petitioners

1. Electronic Security Association
2. Interactive Advertising Bureau
3. NCTA – The Internet & Television Association

## B. Attorneys for Petitioners

Helgi C. Walker
Lucas C. Townsend
Michael P. Corcoran
Lael Weinberger
Connor P. Mui
Gibson, Dunn & Crutcher LLP
1700 M Street, N.W.
Washington, DC 20036

Allyson N. Ho
Brad G. Hubbard
Brian A. Richman
Gibson, Dunn & Crutcher LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201

## C. Respondent

Federal Trade Commission

## D. Attorneys for Respondent

Anisha Dasgupta
General Counsel
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
(202) 326-2424
adasgupta@ftc.gov

Dated: November 5, 2024

Allyson N. Ho
Brad G. Hubbard
Brian A. Richman
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue
Suite 2100
Dallas, TX 75201-2923

*Counsel for Petitioners*

*/s/ Helgi C. Walker*
Helgi C. Walker
Lucas C. Townsend
Michael P. Corcoran
Lael Weinberger
Connor P. Mui
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, DC 20036-4504
(202) 955-8500
hwalker@gibsondunn.com

ii

# TABLE OF CONTENTS

INTRODUCTION AND NATURE OF THE EMERGENCY ................... 1

RELIEF SOUGHT ................................................................. 5

ISSUE PRESENTED .............................................................. 6

BACKGROUND ..................................................................... 6

    A.    The Lottery Statute For Judicial Review ............................. 6

    B.    The Commission Issues The Final Rule ................................ 8

    C.    Petitioners And Others File Petitions For Review In Four Circuits ....................................................................... 9

    D.    The Commission Refuses To Send The Petitions To The JPML ................................................................................. 11

JURISDICTION ..................................................................... 13

ARGUMENT ......................................................................... 13

I.    The Court Should Issue A Writ Of Mandamus ............................. 14

    A.    The Commission Has Defied A Specific, Unequivocal Statutory Command ........................................................... 14

    B.    Petitioners Have No Alternative Remedy ............................ 19

    C.    Mandamus Is Appropriate .................................................... 21

II.    The Court Should Enter A Brief Administrative Stay .................. 24

CONCLUSION ....................................................................... 25

# TABLE OF AUTHORITIES

**Cases**                                                                       **Page**

*Arlington Oil Mills, Inc. v. Knebel*,
   543 F.2d 1092 (5th Cir. 1976)......................................................16

*Arnold v. Garlock, Inc.*,
   278 F.3d 426 (5th Cir. 2001)........................................................24

*In re Ctr. for Biological Diversity*,
   53 F.4th 665 (D.C. Cir. 2022)......................................................20

*In re FERC*,
   ___ F. Supp. 3d ___, 2024 WL 1596933 (J.P.M.L. 2024)....................18

*Fort Bend Cnty. v. U.S. Army Corps of Eng'rs*,
   59 F.4th 180 (5th Cir. 2023) ..................................................13, 14

*Humane Soc'y of the U.S. v. USDA*,
   41 F.4th 564 (D.C. Cir. 2022)......................................................17

*In re La. Pub. Serv. Comm'n*,
   58 F.4th 191 (5th Cir. 2023) .......................................................13

*Lee v. Bickell*,
   292 U.S. 415 (1934).....................................................................21

*In re Lloyd's Reg. N. Am., Inc.*,
   780 F.3d 283 (5th Cir. 2015)........................................................22

*Lopez v. Davis*,
   531 U.S. 230 (2001).....................................................................15

*In re MCP No. 185*,
   2024 WL 3491226 (6th Cir. July 12, 2024) ...................................25

*MCR Oil Tools, L.L.C. v. U.S. Dep't of Transp.*,
   110 F.4th 677 (5th Cir. 2024) ......................................................24

# TABLE OF AUTHORITIES
*(continued)*

**Page**

*Murphy v. Smith*,
    583 U.S. 220 (2018)................................................................ 15

*In re Paxton*,
    60 F.4th 252 (5th Cir. 2023) ................................................ 13

*Saturn Airways, Inc. v. Civil Aeronautics Bd.*,
    476 F.2d 907 (D.C. Cir. 1973) (per curiam)........................ 15

*Terrace v. Thompson*,
    263 U.S. 197 (1923)............................................................. 21

*In re TikTok, Inc.*,
    85 F.4th 352 (5th Cir. 2023) ........................................ 22, 23

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) (en banc)............................... 24

*Wages and White Lion Investments, L.L.C. v. U.S. FDA*,
    16 F.4th 1130 (5th Cir. 2021) ............................................. 25

**Statutes**

5 U.S.C § 706 ............................................................................. 13

15 U.S.C. § 57a ......................................... 6, 8, 10, 11, 16, 17, 18

28 U.S.C. § 2112 .................. 1, 2, 5, 6, 7, 10, 11, 14, 15, 16, 18, 19, 20, 23

44 U.S.C. § 1501 ........................................................................ 17

**Rules**

5th Cir. R. 27.3 ..................................................................... 5, 12

Fed. R. App. P. 21 ...................................................................... 11

Fed. R. App. P. 26 ...................................................................... 11

# TABLE OF AUTHORITIES
*(continued)*

**Page**

Fed. R. App. P. 27 ..................................................................... 5

J.P.M.L. Rule 25.2 ........................................................... 16, 19

**Other Authorities**

*Black's Law Dictionary* (12th ed. 2024) ............................. 15, 16

C. Wright & A. Miller, Fed. Prac. & Proc. § 3944 ............... 6, 7, 18

Comment of Interactive Advertising Bureau, Re: Request for
    Comment on Negative Option Rule, P064202 (June 23,
    2023), available at https://tinyurl.com/2vu9z96r ................. 23

D. Michaels & J. Pisani, *Ending Subscriptions Will Get
    Easier With New 'Click-to-Cancel' Rule*, WALL. ST. J. (Oct.
    16, 2024), https://tinyurl.com/y8yjc8u2 ................................. 9

E. Tulfo, *The Federal Government Just Made It Much Easier
    to Cancel Your Gym Membership*, CNN (Oct. 16, 2024),
    https://tinyurl.com/25fv8fre ................................................... 9

FTC, *Federal Trade Commission Announces Final "Click-to-
    Cancel Rule* (Oct. 16, 2024), https://tinyurl.com/54f3dpca ........ 8

FTC, Posting on X (Oct. 16, 2024),
    https://tinyurl.com/2jub6wzt ................................................. 8

J. da Silva, *US 'Click to Cancel' Rule to Ban Subscription
    Traps*, BBC (Oct. 16, 2024), https://tinyurl.com/56fms9wn ......... 9

L. Nylen, *FTC 'Click-to-Cancel' Rule Finalized to End
    Recurring Subscriptions Easily*, BLOOMBERG (Oct. 16,
    2024), https://tinyurl.com/dxevpy7z ....................................... 9

Lina Khan, Posting on X (Oct. 16, 2024),
    https://tinyurl.com/2ze5mncj .................................................. 8

vi

# TABLE OF AUTHORITIES

*(continued)*

**Page**

Notice of Multicircuit Petitions for Review, *In re FCC*,
MCP No. 191 (J.P.M.L. Sept. 16, 2024)..................................................7

Notice of Multicircuit Petitions for Review, *In re FERC*,
MCP No. 164 (J.P.M.L. June 7, 2021)....................................................7

Notice of Multicircuit Petitions for Review, *In re FERC*,
MCP No. 175 (J.P.M.L. Jan. 18, 2024) ..................................................7

Today, *New FTC Rules Aim to Make It Easier to Cancel
Subscriptions* (Oct. 19, 2024) (available on YouTube),
https://tinyurl.com/muukvwzy.................................................................9

Vice President Kamala Harris, Posting on X (Oct. 16, 2024),
https://tinyurl.com/2as6nj5m..................................................................9

The White House, Posting on X (Oct. 16, 2024),
https://tinyurl.com/8esr8wtn ..................................................................9

## INTRODUCTION AND NATURE OF THE EMERGENCY

A federal agency has gone rogue.  The Federal Trade Commission is refusing to perform a basic ministerial and mandatory legal duty: sending petitions for review of its recent rule to the Judicial Panel on Multidistrict Litigation ("JPML").  That flat refusal is preventing the JPML from timely conducting the judicial lottery to pick a court of appeals to hear the petitions and, in turn, preventing Petitioners from seeking stay relief in the winning court.  This Court should reject the Commission's effort to play umpire in a dispute to which it is itself a party.  Mandamus is needed to protect the judicial lottery process and ensure that Petitioners can seek an orderly stay of the Commission's rule in a single court.

On October 16, 2024, the Commission issued a final rule in *Negative Option Rule*, RIN 3084-AB60, concerning recurring subscriptions ("Final Rule" or "Rule") by publishing the Rule on its website and announcing it to the world with much fanfare.  Aggrieved parties filed petitions for review in four courts of appeals and timely served their petitions on the Commission within ten days of the Rule's "issuance," as provided by the judicial lottery statute.  *See* 28 U.S.C. § 2112(a)(1).  The Commission had a statutory duty to "promptly" send these petitions to the JPML after the

ten-day period expired on October 28, 2024. The JPML would then hold a lottery to select one court of appeals to hear the challenges on a consolidated basis. *Id.* § 2112(a)(3). This is a mechanical, nondiscretionary process that agencies have carried out hundreds of times before without incident.

Here, however, the Commission refuses to perform its duty. Although the Commission concedes that the petitions were properly served on it under the lottery statute, the agency has taken the position that the Rule announced on October 16 will be promulgated only when the Office of the Federal Register publishes that Rule at some indefinite time in the future. The Commission thus asserts that its duty to send the petitions for review to the JPML is not triggered until ten days after such publication. Until then, the Commission has vowed to sit on the petitions that have been filed, claiming unilateral authority to interpret the lottery statute. The agency is thus effectively preventing the lottery from timely proceeding and stymying the Petitioners from seeking a stay of the Rule in the orderly fashion required by the lottery statute.

The Commission has no right to appoint itself gatekeeper of the judicial lottery, nor authority to ignore the plain language and clear

2

mandate of the lottery statute.  The agency's stonewalling has ground to a halt this otherwise mechanical process and left judicial review of the Rule in limbo.  And it threatens irreparable harm to companies that must start coming into compliance with the Rule while they await clarity on its legality.

None of this is how an agency should function.  Agencies typically send petitions to the JPML within a day or two after the ten-day lottery period ends, flagging any potential timing disputes for the JPML and the lottery court to resolve.  To Petitioners' knowledge, no agency *ever* has refused to send properly served petitions, until now.

There is no merit to the Commission's position that it has not yet "issued" its Rule.  The ordinary meaning of the word "issuance" in the lottery statute is to announce publicly or officially publish, which is exactly what the Commission did with the Rule on October 16.  Indeed, when the Commission publicly released the Rule on that date, it proclaimed in the Rule itself that "[t]he Commission now promulgates" *and* "issues" "a final Rule."  The Commission simultaneously posted the final Rule and announced it on its website, on social media, and in press releases.  The Commission cannot subject companies to the pressure of

complying with the Rule while insulating it from orderly judicial review. If the Commission has a different interpretation of when the ten-day period under the lottery statute expires, that is a question for a court—*not* the agency—to decide. The Commission should raise any objections to the petitions before the federal courts—*after* it has notified the JPML of the petitions.

Petitioners have no way to force the Commission to do its job other than through this mandamus petition. The JPML has confirmed that it has no rules or mechanism to force the Commission's compliance—because, to Petitioners' knowledge, the issue has never arisen before. The lottery statute also offers no mechanism for relief.

If this Court does not compel the Commission to follow the law, companies around the country will be left under a cloud of legal uncertainty as they are forced to take steps and incur nonrecoverable costs to comply with this unlawful Rule. Even if Petitioners here—or in other circuits—moved for a stay prior to consolidation, they could not be certain of the scope or validity of any stay, which could conflict with decisions by other courts or require a do-over after the lottery occurs and the cases are consolidated in one court of appeals. The lottery is designed to avoid

precisely that confusion, chaos, and judicial inefficiency by combining rule challenges in a single court of appeals, and it is why the lottery process is swift and mechanical.

## RELIEF SOUGHT

Pursuant to Federal Rule of Appellate Procedure 21 and 27 and Fifth Circuit Rule 27.3, Petitioners thus respectfully request that the Court hold that the Rule "issued" within the meaning of 28 U.S.C. § 2112 on October 16, 2024, and accordingly enter a writ of mandamus as soon as possible and no later than November 19, 2024, directing the Commission to notify the JPML of their petition (and any others properly served on the Commission before October 28, 2024) as soon as possible and no later than November 20, 2024. This relief will ensure the orderly process of judicial review and allow Petitioners and their members to move for a stay of the Rule in the transferee court of appeals. While this Court decides this petition, Petitioners also request that the Court enter a brief administrative stay of the Rule to preserve the status quo and ensure that the Rule's compliance clock is not triggered in the meantime.

## ISSUE PRESENTED

Whether the Commission bears a mandatory legal duty to notify the JPML of its receipt of multi-circuit petitions for review of the Final Rule because the Commission "issued" the Rule on October 16, 2024, the ten-day window for filings under 28 U.S.C. § 2112 thus commenced on that date and ended on October 28, 2024, and the Commission has no right to adjudicate the propriety of the petitions.

## BACKGROUND

### A.    The Lottery Statute For Judicial Review

The Rule here is subject to judicial review directly by the federal courts of appeals. *See* 15 U.S.C. § 57a(e). Where a rule is challenged in multiple courts of appeals, Congress has provided a mechanism for consolidating the challenges in a single court. Specifically, 28 U.S.C. § 2112 requires a lottery process for all petitions filed "within ten days after issuance of the [agency's] order." *Id*. § 2112(a)(1).

That process is straightforward and "purely mechanical." C. Wright & A. Miller, Fed. Prac. & Proc. § 3944. Petitioners who file within ten days of the order's issuance are directed to serve the agency with file-stamped copies of their petitions. 28 U.S.C. § 2112(a)(1)-(2). "If [the]

agency . . . receives two or more petitions for review" that meet those criteria, "the agency . . . *shall*, *promptly after* the expiration of the ten-day period . . . notify the [JPML]." *Id.* § 2112(a)(3) (emphasis added). The JPML then "shall, by means of random selection, designate one court of appeals" from those petitions "and shall issue an order consolidating the petitions for review in that court of appeals." *Id.* Litigation can then commence in an orderly fashion, without the risk of confusing and conflicting decisions by multiple courts.

Naturally, the transferee court can resolve issues like timeliness or objections to its jurisdiction. *See* Wright & Miller, Fed. Prac. & Proc. § 3944. In fact, agencies routinely send petitions to the JPML even when there are disputes over the timing of the petitions. *See, e.g.*, Notice of Multicircuit Petitions for Review 1–4, *In re FERC*, MCP No. 175 (J.P.M.L. Jan. 18, 2024); Notice of Multicircuit Petitions for Review 1 n.1, *In re FERC*, MCP No. 164 (J.P.M.L. June 7, 2021); Notice of Multicircuit Petitions for Review 2–3, *In re FCC*, MCP No. 191 (J.P.M.L. Sept. 16, 2024). In all cases, those disputes are resolved by the judiciary, not by the agency.

**B.     The Commission Issues The Final Rule**

On October 16, 2024—just weeks before the presidential election—the Commission issued the Final Rule by a 3-2 vote to much fanfare.  *See* FTC, *Federal Trade Commission Announces Final "Click-to-Cancel" Rule* (Oct. 16, 2024), https://tinyurl.com/54f3dpca.  The Rule regulates recurring subscription plans, which are contracts that hundreds of millions of Americans use for everything from telephone and internet service to lawn care and home security, all pursuant to a statutory provision that Congress adopted to rein in the agency's rulemaking powers, 15 U.S.C. § 57a.

The Commission posted on its website the text of the "Final Rule," proclaiming that it "issues" the "final" Rule and "now promulgates a final Rule."  App.4; App.6.  To ensure that the public was aware of the Rule, the Commission also issued a press release and "announce[d] [the] final 'Click-to-Cancel' Rule" regarding "recurring subscriptions" on social media.  FTC, Posting on X (Oct. 16, 2024), https://tinyurl.com/2jub6wzt.

The Chair of the Commission likewise posted to social media that "[t]oday @FTC finalized a rule" regarding "subscription[s]."  Lina Khan, Posting on X (Oct. 16, 2024), https://tinyurl.com/2ze5mncj.  Politicians broadcasted it too, with presidential candidate Kamala Harris declaring

8

that "President Biden and I are helping Americans" with the new Rule. Vice President Kamala Harris, Posting on X (Oct. 16, 2024), https://tinyurl.com/2as6nj5m; *see also* The White House, Posting on X (Oct. 16, 2024), https://tinyurl.com/34kjve6r ("The FTC has finalized its 'Click-to-Cancel rule'" regarding subscriptions).  The media also covered the Rule, with publications ranging from the Wall Street Journal to the BBC and talk shows such as the Today Show all reporting on the Rule and Chair Khan's statements about it.[1]

### C. Petitioners And Others File Petitions For Review In Four Circuits

Because the Commission had issued the Final Rule, Petitioners on October 22, 2024, filed a petition for review in this Court, No. 24-60542, in accordance with the lottery statute and the FTC Act, which provides that "any interested person . . . may file a petition" in any "circuit in

---

[1] *See, e.g.*, D. Michaels & J. Pisani, *Ending Subscriptions Will Get Easier With New 'Click-to-Cancel' Rule*, WALL ST. J. (Oct. 16, 2024), https://tinyurl.com/y8yjc8u2; J. da Silva, *US 'Click to Cancel' Rule to Ban Subscription Traps*, BBC (Oct. 16, 2024), https://tinyurl.com/56fms9wn; E. Tulfo, *The Federal Government Just Made It Much Easier to Cancel Your Gym Membership*, CNN (Oct. 16, 2024), https://tinyurl.com/25fv8fre; Today, *New FTC Rules Aim to Make It Easier to Cancel Subscriptions* (Oct. 16, 2024) (available on YouTube), https://tinyurl.com/muukvwzy; L. Nylen, *FTC 'Click-to-Cancel' Rule Finalized to End Recurring Subscriptions Easily*, BLOOMBERG (Oct. 16, 2024), https://tinyurl.com/dxevpy7z.

which such person resides or has his principal place of business, for judicial review" no "later than 60 days after a rule is promulgated . . . by the Commission." 15 U.S.C. § 57a(e)(1)(A). The Commission has no rules or guidance that even arguably define the key terms in the lottery statute or FTC Act. Based on the plain meaning of the relevant statutes, Petitioners thus filed their petitions well within both the FTC Act's 60-day window and the 10-day period specified by the lottery statute. 28 U.S.C. § 2112(a)(1). Petitioners are "interested person[s]," 15 U.S.C. § 57a(e)(1)(A), because they collectively represent companies that provide recurring subscriptions for home security, media, brand marketing, technology, cable, broadband, voice, and video streaming services. Petitioners' members will be regulated and harmed by the Rule.

Petitioners were not alone in challenging the Rule. In the Eleventh Circuit, No. 24-13436, the U.S. Chamber of Commerce and the Georgia Chamber of Commerce have challenged the Rule. The National Federation of Independent Business, Inc. and the Michigan Press Association filed a petition for review in the Sixth Circuit, No. 24-3912, and Custom Communications, Inc. d/b/a/ Custom Alarm filed a petition in the Eighth Circuit, No. 24-3137. Petitioners here and in those three other cases then

served the Commission with file-stamped copies of their petitions as the lottery statute requires.  *See* 28 U.S.C. § 2112(a)(3).  The Commission does not deny that the petitions were properly served within ten days after public release and announcement of the Rule on October 16, 2024.

### D. The Commission Refuses To Send The Petitions To The JPML

Having "receive[d] two or more petitions for review" of its Rule, the Commission was required to "promptly after the expiration of the ten-day period" notify the JPML of the petitions for the lottery to run.  28 U.S.C. § 2112(a)(3).  That period ended on October 28, 2024.[2]  But in an unprecedented twist, the Commission refused to notify the JPML of the petitions.

Instead, in correspondence with Petitioners' counsel, the Commission has taken the position that Petitioners' and others' petitions for review are premature because the Commission—despite publicly announcing the Final Rule, stating that it was "issuing" and "promulgating" the Rule, and posting the Rule to its website on October 16, 2024—has not yet promulgated the Rule under 15 U.S.C. § 57a(e).  App.275.  According

---

[2] The tenth day after October 16, 2024, was a Saturday, extending the period to Monday, October 28.  *See* Fed. R. App. P. 26(a).

11

to the Commission, the ten-day period in the lottery statute does not expire until ten days after the Rule's publication in the Federal Register—and the agency has unilateral authority to determine when to send petitions to the JPML. App.282. Only Federal Register publication, says the Commission, can put the "public on notice" of the Rule. *Id.*

Petitioners wrote to the JPML asking for relief, App.287, but were informed that the JPML has no mechanism to challenge the FTC's refusal to send the petitions, App.290. Petitioners thus file this petition for a writ of mandamus to compel the Commission to notify the JPML of their petition (and any others properly served on the Commission within the 10-day window), and seek a short administrative stay of the Rule pending the lottery's outcome.

There is good cause for emergency relief pursuant to Fifth Circuit Rule 27.3 because, as explained below, the Commission is stymying Petitioners' efforts to seek a stay pursuant to the orderly process Congress prescribed, and Petitioners are incurring irreparable harm in the meantime.

## JURISDICTION

This Court has jurisdiction under the All Writs Act to issue a writ of mandamus to "safeguard [its] prospective jurisdiction to review" the Commission's actions. *In re La. Pub. Serv. Comm'n*, 58 F.4th 191, 192 (5th Cir. 2023). "This [C]ourt also has jurisdiction under § 706(1) of the Administrative Procedure Act ('APA') to 'compel agency action unlawfully withheld or unreasonably delayed.'" *Id.* at 192–93 (quoting 5 U.S.C § 706(1)) (noting that these statutes "provide separate, but closely inter-twined, grounds for mandamus relief").

## ARGUMENT

This is exactly the sort of case that warrants mandamus relief. A writ of mandamus is appropriate when the petitioner's "right to the writ is clear and indisputable" and the petitioner has "no other adequate means of obtaining relief," and when "the issuing court [is] satisfied in its own discretion that the writ is appropriate under the circumstances." *In re Paxton*, 60 F.4th 252, 255 (5th Cir. 2023). Here, the Commission has turned the lottery statute's "specific, unequivocal command" to "promptly" notify the JPML of pending petitions for review into a tool to halt the lottery process. *See Fort Bend Cty. v. U.S. Army Corps of Eng'rs*,

59 F.4th 180, 197 (5th Cir. 2023). Petitioners have no other adequate means of obtaining relief for that dereliction of statutory duty because neither the JPML nor any other federal law offers a way to compel the Commission to act. Mandamus is also warranted because the Commission's flat refusal to do its mandatory duty under the plain language of the lottery statute does nothing but stall the orderly process of judicial review, contrary to the process Congress deliberately created, leaving companies uncertain and without any means to obtain proper judicial relief even as they are forced to start incurring unrecoverable costs for compliance.

## I. The Court Should Issue A Writ Of Mandamus

### A. The Commission Has Defied A Specific, Unequivocal Statutory Command

A mandamus petitioner seeking to "compel agency action unlawfully withheld or unreasonably delayed" has a clear right to the writ if the "agency ignored 'a specific, unequivocal command' in a federal statute or binding regulation." *Fort Bend Cty.*, 59 F.4th at 197. Here, that "discrete" and "non-discretionary act," *id.*, is notifying the JPML of the petitions "promptly" after the "ten-day period" following the Rule's "issuance," 28 U.S.C. § 2112(a)(3). The lottery statute is perfectly clear: the

14

Commission "*shall[] promptly* . . . notify the [JPML]" of these petitions. *Id.* The term "shall" is commonly used "to impose discretionless obligations," and the statute leaves no room for the Commission to deviate from its duty. *Lopez v. Davis*, 531 U.S. 230, 241 (2001); *see also Murphy v. Smith*, 583 U.S. 220, 223 (2018) ("shall" entails a "nondiscretionary duty").

The Commission insists it has no such duty because the petitions are premature and the ten-day lottery period has not yet started, but that is wrong twice over. *First*, the ten-day period has already ended. The ten-day period in the lottery statute was triggered by the Rule's "issuance" on October 16, 2024—the date the Commission "sen[t]" the Rule "out to the public" by posting the full text of the Rule to its website, issuing a press release about it, posting about it on social media, and otherwise making it widely and publicly available. Issuance, *Black's Law Dictionary* (12th ed. 2024); *see also* Issue, *Black's Law Dictionary* ("to send out or distribute officially"). That is when rules are "issu[ed]" under § 2112: when their "substance" is "communicated to the public in some detail." *Saturn Airways, Inc. v. Civil Aeronautics Bd.*, 476 F.2d 907, 909 (D.C. Cir. 1973) (per curiam). In similar contexts, this Court similarly

15

has held that agency orders are "final" and "legally effective" when the affected "industry ha[s] actual notice" of them. *Arlington Oil Mills, Inc. v. Knebel*, 543 F.2d 1092, 1099 (5th Cir. 1976); *see also* J.P.M.L. R. 25.2 (agencies "*shall* submit a notice of multicircuit petitions" including simply "the date of the relevant agency order"). Here, that notice was given on October 16.

The Commission has no response—it offers no logic to rebut the commonsense principle that a rule is issued by an agency when it is made publicly available, and can cite no law or regulation that even arguably displaces it.

The Commission instead simply equates "issuance" with "promulgates" and insists it has not yet "promulgated" the Rule within the meaning of the FTC Act. App.275; App.282. That too is incorrect. The lottery statute is keyed to the Rule's "issuance," not to when the Rule is "promulgated." 28 U.S.C. § 2112(a). And even looking to the FTC Act's requirement for "promulgat[ion] . . . by the Commission" only confirms that the Rule was both "issued" *and* "promulgated" on October 16. 15 U.S.C. § 57a(e). The Rule was "announce[d] publicly" and "formal[ly] . . . publi[shed]"—and thus "promulgated," *see Black's Law Dictionary*—"by

16

the Commission" on October 16.[3]  Indeed, the Rule was also "transmitted to the Office of the Federal Register" on that date, App.282, which by law presupposes that it was already "issued, prescribed, or promulgated," 44 U.S.C. § 1501.  *See also Humane Soc'y of the U.S. v. USDA*, 41 F.4th 564, 569 (D.C. Cir. 2022) (the law contemplates that rules may be promulgated "before publication in the Federal Register").

In response to all this, the Commission has cited only a handful of cases suggesting that promulgation may sometimes require publication by the Federal Register.  App.283.  But none of those cases interpreted the term "issuance" in the lottery statute or the FTC Act's requirement for "promulgat[ion] . . . *by the Commission*," not by the Office of the Federal Register.  15 U.S.C. § 57a(e) (emphasis added).

If there could be any doubt, take it from the Commission, not the Petitioners.  The Rule holds itself out as a "Final Rule," and the Commission itself said it was "issu[ing]" the Rule on October 16, 2024.  App.4. The Rule also proclaimed that "[t]he Commission now promulgates a

---

[3] The Commission frets that its press releases and social media posts have not been enough to "put the public on notice of the Rule," App.282, but that does not pass the straight-face test.  The Commission made every effort to broadly disseminate news of the Rule, and by the reaction of politicians and the media, it succeeded.  *See supra*, pp. 8–9.

final Rule" and stated it was doing so "[b]y direction of the Commission" under the FTC Act, 15 U.S.C. § 57a(e). App.6; App.233. Any affected entity would take the Commission at its word. This Court should do the same. The Commission issued the Rule on October 16, the petitions are timely, and the ten-day period in the lottery statute expired as of October 28, 2024.

*Second*, and more fundamentally, it is not the Commission's province to decide the timing of the judicial lottery. Section 2112 does not vest the Commission with authority to prejudge which petitions fall within the ten-day window and which do not. Instead, Section 2112 charges the Commission with the "purely mechanical" role of sending petitions to the JPML "promptly" after the ten-day period expires. C. Wright & A. Miller, Fed. Prac. & Proc. § 3944. If the Commission wishes to dispute when the ten-day period expires or even the propriety of particular petitions, it must do so before the judiciary, just like any other interested party—not resolve that dispute in the first instance by itself in an effort to stall judicial review. *Id.*; *see also In re FERC*, ___ F. Supp. 3d ___, 2024 WL 1596933, at *2 n.1 (J.P.M.L. 2024) (ripeness is an issue

"properly decided by the appellate court").[4]  That is why agencies routinely send petitions to the JPML even when there are potential disputes about timing, *see supra* p. 7, and why it appears that no agency has ever refused to send properly served petitions to the JPML.  Mandamus is needed to compel the Commission to act consistent with the plain language and clear directive of the lottery statute.

### B.  Petitioners Have No Alternative Remedy

Mandamus is Petitioners' only means for obtaining relief.  The Commission is flouting the law and obstructing judicial process.  Although the JPML's rules specify that the "agency *shall* submit a notice" of the petitions, J.P.M.L. Rule 25.2(a) (emphasis added), the JPML has confirmed that it has "no Panel Rule addressing a challenge to an agency decision . . . to not file a Notice of Multicircuit Petitions."  App.290.  The lottery statute also contains no mechanism to force the Commission to

---

[4] The Court should easily reject the Commission's specious claim that it is trying to avoid prejudice to *other* potential challengers of its Rule.  App.282–83.  It is not the Commission's job to police the judicial process.  The ten-day lottery period has run, and future petitions for review can be consolidated in the transferee court within 60 days of promulgation of the Rule, 28 U.S.C. § 2112(a)(5), just like in any other case challenging an agency order.  If any future petitioners wish to challenge the lottery or its outcome, they can do so *in court*—not through the Commission's unilateral say-so.

comply with its statutory duty to "promptly . . . notify" the JPML.  28 U.S.C. § 2112(a)(3).  A "writ of mandamus" is therefore "the only way to compel [the Commission] to perform its clear duties" under Section 2112. *In re Ctr. for Biological Diversity*, 53 F.4th 665, 671 (D.C. Cir. 2022).

The Commission's vague promise to send the petitions at some unspecified later date is not an adequate substitute for the process that the lottery statute requires *now*.  Petitioners wish to seek a stay of the Rule, and the Commission's duty is to "*promptly*" notify the JPML so that these proceedings may be swiftly consolidated with a single court as the arbiter of all stay requests.  28 U.S.C. § 2112(a)(3) (emphasis added).  In counsel's and Petitioners' experience, that typically happens within one to two days after the ten-day period ends.  Without swift consolidation, Petitioners will be forced to litigate a stay request while other potential requests are litigated in other circuits—a piecemeal process that could lead to conflicting results, causing chaos and uncertainty.  Further, Petitioners' request might have to be relitigated if any other circuit is the transferee of the lottery, increasing the uncertainty and disruption in this case.

In the meantime, companies are incurring significant expenses to comply with this Rule and need the certainty of a stay that only a prompt

judicial lottery can provide. Those are precisely the sorts of inadequacies that make equitable relief available. *See, e.g.*, *Terrace v. Thompson*, 263 U.S. 197, 214 (1923) (equity jurisdiction exists when the alternative remedies are not "as complete, practical and efficient as that which equity could afford"); *Lee v. Bickell*, 292 U.S. 415, 421 (1934) (a legal remedy is inadequate when one must litigate a "multiplicity" of suits). And "waiting" for more petitions, as the Commission intends to do here, App.282, will only exacerbate that prejudice. More petitions will only result in a stay of consolidation pending litigation on the timeliness of those new petitions, leading to further delays in what is supposed to be a straightforward lottery process.

Petitioners have no other options for securing the orderly process Congress intended. The only meaningful relief available is an order from this Court compelling the Commission to notify the JPML now of all petitions filed before the ten-day period expired on October 28, 2024, as the lottery statute requires.

### C.    Mandamus Is Appropriate

Finally, mandamus is appropriate because of the significance of the Commission's improper actions and because of the harms that

Petitioners will suffer absent relief.  Mandamus is commonly used when an entity subject to judicial oversight "persistently and without reason refuses to" act.  *In re United States ex rel. Drummond*, 886 F.3d 448, 450 (5th Cir. 2018) (citation omitted).  That is true here, and additional considerations cry out for mandamus relief.

*First*, mandamus is "particularly appropriate" because "the issues [here] have an importance beyond the immediate case," *In re TikTok, Inc.*, 85 F.4th 352, 367 (5th Cir. 2023) (citation omitted), and are likely to arise in the future, *In re Lloyd's Reg. N. Am., Inc.*, 780 F.3d 283, 294 (5th Cir. 2015).  That is because the lottery statute sets the rules of the road for reviewing not only the Commission's orders and rules, but also the orders and rules of other agencies.  If the Commission succeeds with this arrogation of power, other agencies will follow suit.  If agencies in general believe that they can unilaterally determine when the ten-day period begins and ends, or that a particular petition is problematic for whatever reason, and thus prevent the normal workings of the judicial lottery, then agencies will usurp power from the judiciary.

It would be impossible for the courts to review such agency decisions in the ordinary course.  The result would be chaos, with petitioners

(and courts) losing the orderly process and judicial efficiency that the lottery statute was designed to provide. Agency actions would spawn duplicative cases, more litigation costs, and a greater risk of courts of appeals issuing conflicting rulings—all of which would cause more uncertainty as to the status of any agency action while parties wait and wonder which petitions will be sent to the JPML and when. "[G]ranting mandamus in this case will [thus] improve 'consistency of outcomes,'" *In re TikTok, Inc.*, 85 F.4th at 367, by instructing when an agency has an obligation to "promptly . . . notify" the Panel in response to a petition triggering the lottery statute, 28 U.S.C. § 2113(a)(3).

*Second,* mandamus is warranted because of the harms that Petitioners will suffer absent relief. As Petitioners already made clear to the Commission, it will take companies months, if not years, of expensive work to ensure they can comply with the Rule's complex requirements.[5] That work will need to start now absent a stay of the Rule. Unless the lottery runs promptly, Petitioners may be forced to proceed with

---

[5] *See, e.g.*, Comment of Interactive Advertising Bureau at 21, Re: Request for Comment on Negative Option Rule, P064202 (June 23, 2023), available at https://tinyurl.com/2vu9z96r.

litigation in this Circuit while parallel litigation over the same Rule proceeds in other circuits.

Such litigation in a tentative forum is the sort of injury that this Court has repeatedly said warrants mandamus. *See, e.g.*, *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 309, 318–19 (5th Cir. 2008) (en banc) (litigating in the wrong court is not an error that can be corrected by appellate review). Worse, Petitioners and their members will be left with uncertainty as to the validity, scope, and enforceability of any stay issued by this Court, which could conflict with decisions from other courts on the same Rule. Mandamus is needed to avoid those harms and restore order to the lottery process.

## II. The Court Should Enter A Brief Administrative Stay

The Court also should enter a brief administrative stay of the Commission's Rule until the lottery process has concluded. Courts routinely grant administrative stays to preserve the status quo while they consider requests for other relief. *See Arnold v. Garlock, Inc.*, 278 F.3d 426, 433 (5th Cir. 2001) (administrative stays "provide sufficient time to fairly consider whether a formal stay . . . should issue"); *see also, e.g.*, *MCR Oil Tools, L.L.C. v. U.S. Dep't of Transp.*, 110 F.4th 677, 685 (5th Cir. 2024)

(administrative stay of agency order was granted before motion to stay); *Wages and White Lion Investments, L.L.C. v. U.S. FDA*, 16 F.4th 1130, 1135 (5th Cir. 2021) (same); *In re MCP No. 185*, 2024 WL 3491226 (6th Cir. July 12, 2024) (granting administrative stay).

Here, a short administrative stay is necessary to ensure that the clock for the Rule's effective dates does not begin running while the Court is considering the mandamus petition. Petitioners' members are incurring costs now because compliance with the Rule will take months if not years. If the clock for the Rule's effective date begins to run because the Rule is published in the Federal Register during the Court's consideration of this petition for mandamus, Petitioners may be forced to move for a stay of the Rule's effective date outside the transferee court designated by the lottery process—the exact harm that this petition for mandamus is meant to prevent. An administrative stay therefore will ensure that Petitioners can seek a stay of the Rule's effective date in the transferee court in the orderly fashion provided by the lottery statute.

## CONCLUSION

The Commission does not get to call its own balls and strikes. Consistent with the plain meaning and mandatory directive of the lottery

statute, the Court should hold that the Rule "issued" on October 16, 2024, and therefore enter a writ of mandamus directing the Commission to promptly notify the JPML of their petition (and any others properly served on the Commission before October 28, 2024). The Court should also administratively stay the Rule pending the outcome of the lottery.

Dated: November 5, 2024

Respectfully submitted,

 /s/ Helgi C. Walker
Helgi C. Walker
   *Counsel of Record*
Lucas C. Townsend
Michael P. Corcoran
Lael D. Weinberger
Connor P. Mui
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036-4504
(202) 955-8500
hwalker@gibsondunn.com

Allyson N. Ho
Brad G. Hubbard
Brian A. Richman
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue
Suite 2100
Dallas, TX 75201-2923

*Counsel for Petitioners*

## CERTIFICATE OF SERVICE

I hereby certify that on November 5, 2024, an electronic copy of the foregoing petition was filed with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system. Service will be accomplished on all registered counsel by the appellate CM/ECF system, and counsel for the Federal Trade Commission was also served by email at adasgupta@ftc.gov.

*/s/ Helgi C. Walker*

Helgi C. Walker
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036-4505
(202) 955-8500
hwalker@gibsondunn.com

*Counsel for Petitioners*

## CERTIFICATE OF COMPLIANCE

I certify that this petition complies with the type-volume limitation of Federal Rule of Appellate Procedure 21(d)(1) because, excluding the parts exempted under Federal Rule of Appellate Procedure 21(a)(2)(C), it contains 5,283 words.

I certify that this petition complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this petition has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in 14-point New Century Schoolbook LT.

I further certify that this petition has been scanned for viruses and is virus-free.

Pursuant to Fifth Circuit Rule 27.3, I certify that the facts supporting emergency consideration of this petition are true and complete.

Dated:  November 5, 2024

/s/ *Helgi C. Walker*

Helgi C. Walker
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036-4504
(202) 955-8500
hwalker@gibsondunn.com

*Counsel for Petitioners*